(No. 30655.—

Roy O. Young *et al.*, Appellants, *vs.* Joseph A. Kowske, Appellee.

*Opinion filed November 18, 1948—Rehearing denied Jan. 17, 1949.*

Luther D. Swanstrom, and Jerome J. Sladkey, both of Chicago, for appellants.

Nash, Ahern & McNally, and John J. Kennelly, both of Chicago, for appellee.

Mr. Justice Daily delivered the opinion of the court:

Appellants, Roy O. Young and William H. Sheffner, filed a complaint in the superior court of Cook County

against appellee, Joseph A. Kowske, for the specific performance of a contract for the sale of real estate. The master to whom the case was referred to take the evidence and report his conclusions recommended that a decree be entered dismissing the amended complaint of appellants for want of equity. A decree was entered as recommended and this appeal has been prosecuted to this court.

The evidence shows that William F. Pape, a licensed real-estate broker in the city of Chicago, negotiated with the appellee for the sale of certain of appellee's real estate consisting of vacant land located in the city of Chicago. Thereafter, on July 30, 1945, in the office of said William F. Pape, appellants signed an instrument stating that they agreed to purchase said real estate at a price of $16,000; $1600 to be paid as earnest money; $3400 at the time of delivery of a deed; and of the balance $8000 was to be paid in six months with interest at $4\frac{1}{2}$ per cent per annum, and $3000 at the rate of $52.50 per month with interest at the rate of $4\frac{1}{2}$ per cent per annum, with the privilege of paying more without penalty, same to be secured by purchase money mortgage on said real estate. On the same day, Pape and the appellants met in the office of the Mutual National Bank, and the sum of $1600 was deposited with Charles S. Shillo, assistant trust officer of said bank, as earnest money on the purchase of the real estate, and the contract was altered so as to provide that the appellants were to pay $6400 at the time of the delivery of the deed instead of $3400, and were to give back a purchase money mortgage securing payment of a note for $5000 instead of $8000, payable in six months, and a note for $3000 payable in monthly installments of $52.50 with interest at the rate of $4\frac{1}{2}$ per cent per annum, with the privilege of paying more without penalty.

Shillo, the bank's trust officer, at the request of the appellants, prepared an escrow agreement which provided, among other things, that the appellee would convey the

east 50 feet of said property to the appellant Young, free and clear of any encumbrance; that the appellee would convey the center 60 feet of said property to the appellant Young, and would take back part purchase money mortgage on the said center 60 feet of said property; and that the appellee would convey the west 50 feet of said property to the appellant Sheffner, free and clear of all encumbrances. Said escrow agreement was signed by the appellants, but was never signed by the appellee, Joseph A. Kowske.

On October 15, 1945, the appellee, Kowske, his attorney, Clarence P. Wagner, the appellants, and the said William F. Pape, met with Charles S. Shillo in the Mutual National Bank of Chicago. The aforementioned contract was produced and delivered to Wagner, who examined it and, with the approval and consent of appellants, inked out portions of the contract. The alterations were then and there initialed by the appellants and the appellee, and the contract was signed by the appellee.

The aforementioned escrow agreement was then examined by attorney Wagner, who advised appellee that its provisions were contrary to the provisions of the contract. Appellee did not accept the provisions of the escrow agreement, and after some discussion it was agreed that Shillo was to prepare a new escrow agreement, which was to provide that the appellants were to purchase the real estate for $16,000 cash. As the conference broke up, appellee picked up the contract, which had been lying on the table during the discussion, and put it in his pocket, after, according to his own testimony, having scratched over his name as it was signed to the document. New escrow agreements were prepared, and signed by the appellants, but the appellee refused to sign them, and stated that the deal was off. On November 13, 1945, the appellants tendered the balance of the purchase price to Shillo, as assistant trust officer of the Mutual National Bank of Chicago.

Specific performance of a contract rests in the discretion of the court, to be allowed from all of the facts and circumstances of each case. (*Stephens* v. *Clark,* 305 Ill. 408; *Miller* v. *Clark,* 301 Ill. 273.) If a contract is freely and voluntarily executed and its terms are clear and specific, and it is free from objections, specific performance will be declared as a matter of right and not as a matter of favor. (*Allen* v. *Hayes,* 309 Ill. 374; *Woodrow* v. *Quaid,* 292 Ill. 27.) The terms of the contract must, however, be clear, certain and free of ambiguity. The terms must make the revised acts which are to be done clearly ascertainable. (*Moore* v. *Machinery Sales Co.* 297 Ill. 564; *Gronowski* v. *Jozefowicz,* 291 Ill. 266; *Davier* v. *Kaiser,* 280 Ill. 334.) The contract, as it is enforced, must be enforced according to its terms or not at all. A court has no authority to compel a party to do something different from what he agreed to do by contract. *Cable* v. *Hoffman,* 273 Ill. 272; *Rampke* v. *Beuhler,* 203 Ill. 384.

The contract in the instant case does not comply with the above rules of law. Its terms are not clear, certain and free from ambiguity and doubt. Appellants appeared at the meeting in the Mutual National Bank, on October 15, with documents involving the same transaction. The one a contract which provided for the sale of the real estate and set forth certain provisions for the manner and time of payment, and the other an escrow agreement which contained quite different provisions for the manner and time of payment. The two documents were presented to appellee, and after he and his attorney had examined the contract and suggested certain changes, which were agreed to, appellee signed the contract and laid it on the table. Following this, his attorney determined that there was a difference between the contract already signed and the escrow agreement. We are of the opinion that there was no meeting of the minds of the parties at the time appellee signed the original

contract, inasmuch as the appellants were actually submitting two separate propositions involving the same transaction.

Appellants contend that the escrow agreement was not part of the contract for the purchase of the land for $16,000; that the contract itself was complete in all essentials and that no escrow was necessary under the terms of the contract. However, since both documents provided for the manner and time of payment for the same real estate, and involved the same transaction, we cannot come to the conclusion that the contract sued on in this case sets forth all the terms agreed upon between the parties, after a full and complete understanding and meeting of the minds. The evidence shows that there were to be further negotiations conducted by the parties, a new escrow agreement was to be drawn up by the trust officer, and there was to be a new meeting of the parties. An agreement in writing, which does not purport to give an absolute right without further negotiations thereon, cannot be specifically enforced. *Westphal* v. *Buenger,* 324 Ill. 77.

Counsel for appellants contend that the defense of no meeting of the minds is not available where the instrument is signed by both parties as in this case, and that the signing constitutes the meeting of the minds and is conclusive evidence that the minds have met on all matters contained in the contract. We cannot subscribe to this theory in the instant case, for appellee, while having signed the document, did not deliver it to any of the parties concerned by his action of merely placing it on the conference table. There is some evidence that after he had signed it the document was picked up by Sheffner and then by him laid back again on the table. However, there is no evidence that he took the document into his possession, or that it was turned over to Shillo, representative of the Mutual National Bank, which by the terms of the contract was to keep it in its possession for the mutual benefit of the parties concerned.

Appellants further contend that when the appellee and his attorney made certain changes in the original contract this constituted an offer by them which was accepted by the appellants at the time they initialed the change on the margin of the document. Should this be true, it would not overcome the question whether or not there was a meeting of the minds, because at the time of that action there existed in the minds of the appellants the two different provisions for the manner and time of payment for the property.

Appellants urge that appellee waived his defense of the Statute of Frauds to the verbal agreement on the part of appellants to pay cash and to allow the appellee four months to clear up his back taxes, by not having affirmatively pleaded the Statute of Frauds in his answer to the amended complaint. Appellants, however, in their amended complaint sued to establish a valid written contract, their prayer being: "1. That this court find and establish said contract as having been duly executed and valid and in full force and effect, and that the defendant be directed to execute a duplicate copy thereof, or in the event of his failure so to do, that a Master in Chancery be directed to execute it in his behalf, or that said contract be judicially declared to be established and valid." There follows then a prayer for specific performance of "said agreement." The appellee was not required to plead the Statute of Frauds, the only issue in the case being whether there was a valid written contract. The contentions of the appellants relating to their alleged oral waivers of provisions of the contract are necessarily predicated upon the false assumption that a valid written contract was in force.

Appellants have also cited cases which hold that subsequent to the execution of a contract, the parties may discuss the terms and request alterations or modifications of such contract, and such discussions or requests do not affect the contract or amount to a breach thereof. This argu-

ment, too, is based on the premise that a valid written contract had been made.

From a careful consideration of the entire record, we are of the opinion that no valid contract existed such as would justify a decree for specific performance. The decree dismissing the amended complaint for want of equity will be affirmed.

*Decree affirmed.*