Fay Miller, Appellee, v. Edward G. McDonough and Ruth H. McDonough, Appellants, and Gerry D. Scott, Sr. et al., Appellees.

Gen. No. 11,009.

Second District.

March 20, 1957.

Rehearing denied May 7, 1957.

Released for publication May 7, 1957.

Edward Zukosky, of Wenona, for appellants.

Eugene R. Johnson, of Peoria, Ben C. Leiken, of Eureka, Robert A. Barnes, and O. B. Pace, Jr., both of Lacon, for appellee.

JUSTICE EOVALDI delivered the opinion of the court.

This case involves the foreclosure of four mortgages. The circuit court entered a decree of sale directing that the mortgaged premises be sold subject to a certain lease agreement entered into between the mortgagors and the mortgagee· in three of the mortgages. The mortgagors have brought this appeal.

Edward G. McDonough and his wife, Ruth H. McDonough, appellants, are the owners of a forty acre tract of land known as Indian Springs, located in Woodford county. The property consists primarily of swamp land and has for several years been operated as a public fishing area and as a duck hunting club during the duck season each year. The McDonoughs executed a series of three mortgages on the premises

to Fay Miller, the plaintiff, appellee, herein. The first of these mortgages was in the sum of $7,000 and was executed February 28, 1947. The second mortgage was executed on February 22, 1950, and was in the principal amount of $2,180. The third mortgage was executed on September 28, 1951, in the amount of $4,000.

In addition to the mortgages, the McDonoughs had also, on July 16, 1941, by written agreement, granted to Fay Miller fishing and hunting privileges on the premises for a period of thirty years. In 1945, Fay Miller and his brother, Ray Miller, built a cabin on the premises. On February 14, 1949, the McDonoughs leased to Fay Miller that portion of the premises upon which the cabin stood. This lease was to expire at the same time that Miller's hunting and fishing privileges were to expire under the 1941 agreement.

Simultaneously with the execution of the third mortgage and the extension of the two prior mortgages, defendants-mortgagors, who were represented by an attorney, entered into a lease agreement with Fay Miller. Before he would lend more money on the premises, Miller insisted on an agreement giving him considerable control over the use of the property. This lease restricted the use of the premises to a duck hunting club, pole and line fishing grounds, and the operation of a restaurant. It limited the duck hunting to six shooting privileges, with Fay Miller owning two of the privileges, Ray Miller one, Eugene Nelson one, Eugene R. Johnson one, and defendant, Edward G. McDonough owning the remaining privilege. The agreement recited that the written permission of Fay Miller was required before any improvements could be made on the premises, or any peat, wood or other matter could be removed.

Fay Miller filed his action to foreclose his three mortgages subject to the 1951 lease agreement. Harry

F. Stoller, who was the mortgagee in the fourth mortgage, was made a party defendant, and he filed a counterclaim foreclosing his fourth mortgage, stipulating and agreeing that the lien of his trust deed was junior and subordinate to the lien or liens of the mortgages of the plaintiff, and to the rights, privileges, and charges created by the said agreements. The matter was referred to a Master in Chancery who found in favor of Fay Miller, and recommended that the premises be sold subject to the 1951 lease agreement. The McDonoughs excepted to the Master's findings but were overruled by the trial court. The decree directed the sale of the premises subject to the 1951 lease agreement.

The evidence discloses that all four mortgages were in default. The only point raised on appeal is as to the form of the order of sale which directs sale of the premises subject to the 1951 lease agreement. It is the position of the appellants that the premises should be sold free and clear of this agreement. They contend that all of the agreements regarding hunting privileges were merged into the 1951 agreement and that there was no consideration for that agreement and that it should be considered void for lack of consideration. They further take the position that the practical effect of the 1951 agreement is to cut off the equity of redemption on the part of the mortgagors inasmuch as, they argue, the terms of the 1951 agreement make the property unsaleable to anyone other than the mortgagee.

██ The doctrine of merger is not applicable in this situation. The 1941 agreement is a grant of a thirty-year hunting and fishing privilege, with an attendant right of ingress and egress. The 1951 agreement expressly recognizes and reiterates that grant, and grants certain other additional rights to Fay Miller. The universal definition of a merger is that

it occurs when a lesser and greater estate unite in the same person. Neither the 1941 nor the 1951 agreement creates or grants an estate as contemplated by the doctrine of merger. In Winters v. Polin, 309 Ill. App. 458 at page 463, the court in quoting from Dunkum v. Maceck Bldg. Corp., 256 N. Y. 275, at page 281 said:

" 'The doctrine of merger has never been favored in equity and there the estates will be held to be separate when justice requires it and such was the intention of the parties.' "

In 19 Am. Jur., Sec. 135, page 588, it is stated:

"Under the common-law definition, which is generally accepted under the modern law, merger is the absorption of one estate in another, where a greater estate and a less coincide and meet in one and the same person without any intermediate estate, whereby the less is immediately merged or absorbed in the greater. To constitute a merger, it is necessary that the two estates be in one and the same person, at one and the same time, and in one and the same right. . . ."

Sec. 136, page 589 states, "The modern doctrine is that merger is not favored either at law or in equity." In Hooper v. Goldstein, 336 Ill. 125 at page 132, the Supreme Court said:

"A merger takes place when a greater estate and a lesser meet in one and the same person, in one and the same right, without any intermediate estate. The lesser estate thereby merges in the greater. But a merger is not a necessary result of the union of the two estates in the same person. The intention and interest of the party who unites the two estates in himself will determine whether or not a merger takes place."

To the same effect is Chicago Title & Trust Company v. Kesner, 296 Ill. App. 187, 192.

As to defendants' contention that there was a failure of consideration for the 1951 lease agreement, the evidence in the case indicates otherwise. In the preamble of this agreement, the following mutual recitals are recorded:

"Whereas, Miller has under date of February 28, 1947, and under date of February 22, 1950, loaned to McDonough various sums of money, no part of which has been repaid, and upon which indebtedness no interest has been paid; and
Whereas, said McDonough now desires said Miller to loan him additional funds, and whereas said Miller is willing to do so, in part upon the conditions hereinafter set forth; and
Whereas, further the said McDonough for the last two years has had the use of Miller's cabin on the premises hereinafter described, free of charge. . . ."

Immediately thereafter, the consideration for the agreement is expressed as follows:

"Now, therefore, in consideration of the above premises and of the mutual benefits and advantages accruing to each of the parties hereto, it is agreed by and between them as follows: . . . ."
The evidence discloses that upon entering into this agreement, Fay Miller did lend an additional $4,000 to the appellants and that he took a third mortgage as security for the additional loan. He and his brother, Ray. Miller, spent an additional sum, between $1,500 and $2,000, in making improvements upon the land in connection with their duck hunting rights thereon. The consideration for the 1951 lease agreement was adequate. Fay Miller parted with his money. He agreed to forego his remedies under the mortgages then in default, and he extended the maturity of his two prior mortgages. The defendants, in return, granted the plaintiff a greater control over the mort-

gaged premises, and agreed to refrain from committing waste or otherwise so to use the premises as to damage them for hunting and fishing purposes. These mutual concessions under the established principles of law constitute lawful consideration. "It is a fundamental rule of law that a valuable consideration consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other." Lipkin v. Koren, 392 Ill. 400, at page 406.

Since there was adequate consideration for the 1951 lease agreement the trial court was correct in entering the order for sale subject to the terms of that agreement.

Decree affirmed.

DOVE, P. J. and CROW, J., concur.