NORMAN F. CODO, Plaintiff-Appellant, *v.* UNION NATIONAL BANK AND TRUST COMPANY OF JOLIET, Trustee, *et al.*, Defendants-Appellees.— (FRANK J. NUSTRA *et al.*, Defendants.)

Second District  No. 76-268

Opinion filed November 21, 1977.

Robert M. Bollman, of Diver, Brydges, Bollman, Grach & Riseborough, of Waukegan, for appellant.

William G. Rosing, of Rosing & Carlson, of Waukegan, for appellees.

Mr. JUSTICE BOYLE delivered the opinion of the court:

Norman F. Codo, hereinafter "plaintiff," and Richard F. Janko, hereinafter "defendant," entered into an oral partnership arrangement in the spring of 1972. The partnership purchased approximately 20 acres of undeveloped real estate in Round Lake, Illinois, for $120,000. Each partner's contribution was $60,000 in cash, and this unencumbered real estate was then conveyed to the Union National Bank and Trust Company of Joliet, hereinafter "the bank," as an asset in Land Trust No. 1278, hereinafter "trust," with the bank as trustee. The partnership also purchased some real property in Watseka, Illinois, which was also conveyed to the trust as an asset. Both plaintiff and defendant were the owners of an undivided one-half interest in this trust.

On July 2, 1973, both plaintiff and defendant directed the trustee to execute a note (in the nature of a mortgage) for $125,000 and a trust deed to secure it on the previously unencumbered Round Lake real estate. The note directed the trust to pay out of the trust estate $1,250 a month, beginning August 2, 1973, until July 2, 1976, when the entire principal and interest at 12 percent was due, to plaintiff and defendant. The parties by this transaction, as can be seen, in effect, mortgaged the property to themselves, and the plaintiff was named trustee under the trust deed.

In September of 1974, the parties decided to terminate their partnership arrangement, and defendant paid plaintiff $115,000 of which $80,000 was payment for plaintiff's one-half beneficial interest in the Round Lake property of this trust. Plaintiff resigned as trustee under the trust deed securing the note, and the defendant was appointed the successor trustee. The parties, in terminating plaintiff's one-half interest in the trust, however, did not mention the $125,000 note.

In February of 1975, plaintiff brought this foreclosure action on the $125,000 note and sought $62,500 plus accrued interest. No cash was ever paid on this note and no demand for payment was ever made until this action was brought. At this time the property had a fair market value of $120,000, and the property was still vacant. After lengthy preliminary discovery matters, both sides moved for summary judgment. The trial judge granted defendant's motion for summary judgment and specifically found that the only apparent purpose of this note was to create a lien priority over other possible creditors. The trial judge also found that there was no debt created by the trust deed and note and said, "There being no debt—and certainly a trust deed and a mortgage are incidental to the

debt—there being no debt, there never was a mortgage in this case. There was a nullity. There was a nothing." The trial judge also refused to award costs to either party, noting that neither plaintiff nor defendant was particularly clean in this transaction. Plaintiff's motion to reconsider was denied by the trial court, and he appeals.

Plaintiff presents five issues on appeal: (1) Whether the trust deed and note are supported by valid consideration? (2) Whether defendant is estopped from raising the defense of lack of consideration? (3) Whether the trial court's decision fails to recognize the distinctions between the trustee of the land trust and its beneficiaries? (4) Whether the trial court's granting of summary judgment to defendant was proper? and (5) Whether the principles of summary judgment prevent its application here? The trial court rejected each of these contentions, and we affirm.

The plaintiff contends first that the note and trust deed in the nature of a mortgage are valid because they are supported by valid consideration. The plaintiff points to the following contributions which were made by both parties to the development of the Round Lake real estate as constituting valid consideration:

> (1) Preparation of an option agreement, easement agreement, and deeds:
> (2) Negotiations for obtaining sewer permit, access, and water-retention pond;
> (3) Contacting potential purchasers; and
> (4) Arranging the financing sellers needed to consummate sale of property to plaintiff and defendant:

Plaintiff admits that some of this work was performed by plaintiff, some by defendant, and some by the mutual effort of both, but still contends that the performance of these activities constitutes valid consideration. We disagree.

■■■ It is well settled that consideration for a mortgage may consist of either some interest, a right, or benefit conferred to the mortgagor, or some forbearance, detriment, loss or responsibility, given, suffered or undertaken by the mortgagee. (*Riddle v. La Salle National Bank* (1962), 34 Ill. App. 2d 116, 180 N.E.2d 719.) It is also clear that the burden of proving the validity of the affirmative defense of want of consideration is clearly upon the party asserting it. (*Insurance Company of North America v. Knight* (1972), 8 Ill. App. 3d 871, 291 N.E.2d 40, *appeal dismissed* (1973), 414 U.S. 804, 38 L. Ed. 2d 40, 94 S. Ct. 165.) In the instant case, defendant has met that burden by establishing that there were no monthly mortgage payments of $1,250 ever made, requested, or intended to be made on this mortgage. Defendant further established that the mortgage was in default for over a year and a half prior to the institution of this foreclosure action. The evidence also conclusively

demonstrates that this mortgage was perpetuated by the parties solely to give them lien priority over subsequent creditors. In fact, plaintiff's counsel, when questioned as to the possible purpose of this transaction, could only suggest one purpose: lien priority over other possible creditors.

We also do not believe that the services of the parties constitute a consideration on this record for a note of $125,000. Both plaintiff's and defendant's services were performed in their fiduciary capacities as beneficiaries of this trust and partners in this real estate transaction. These duties appear to be normal entrepreneural activities of partners in real estate and do not constitute consideration based on this record.

■■ Plaintiff argues that the facts establish both by definition and by the specific terms of the note that the indebtedness was supported by consideration. Although we do not disagree with plaintiff's general statements, we note that it is well established that the validity of consideration for the instrument in question must be evaluated as it relates to the entire record and not as perceived in a vacuum of either terms or definitions. (*Rago v. Cosmopolitan National Bank* (1967), 89 Ill. App. 2d 12, 232 N.E.2d 88.) Our review of the entirety of the evidence adduced clearly sustains the trial court's determination that there simply was no debt or mortgage in existence at any time. *Case International Co. v. American National Bank & Trust Co.* (1974), 18 Ill. App. 3d 297, 309 N.E.2d 750.

■■ Plaintiff also contends that defendant is estopped from raising the defense of lack of consideration. Plaintiff argues that the defendant cannot assert the invalidity of a document for lack of consideration when he did not contest the document's validity when it suited his purposes. Plaintiff's argument is entirely without merit, because the equitable principles of estoppel asserted by plaintiff cannot be used against this defendant to perpetuate a clearly fraudulent or a sham transaction. (*Freeman Coal Mining Corp. v. Burton* (1944), 388 Ill. 604, 58 N.E.2d 589, *cert. denied* (1944), 325 U.S. 859, 89 L. Ed. 1978, 65 S. Ct. 1196.) It is also well settled that one who seeks to benefit from the equitable principles of estoppel must have had no knowledge of or means of knowing the true circumstances and must have relied upon the assertions and actions of the other. (*Levin v. Civil Service Com.* (1972), 52 Ill. 2d 516, 288 N.E.2d 97.) The plaintiff, an attorney, surely knew that the trust deed and note in the nature of a mortgage were not incident to a valid debt and that the purpose was only to give lien priority over other creditors. His attorney at trial could profess no other purpose than plaintiff's blanket assertions of valid consideration, contained both in the note and in his affidavit. These blanket declarations are not sufficient to establish that this plaintiff, experienced in land and business transactions, had no knowledge or

means of knowing the true circumstances of this transaction. Accordingly, plaintiff cannot now assert the equitable principle of estoppel where plaintiff had knowledge of the true facts. *Levin v. Civil Service Com.*, 52 Ill. 2d 516.

Plaintiff next contends that the decision of the trial court fails to recognize the distinctions between the trustee of the land trust and its beneficiaries. Plaintiff argues that this decision of the trial court places the land trust concept in jeopardy and allows the beneficiary to go outside the scope of his agreement and revoke the actions of a properly directed trustee. We disagree.

First, we note the trial court's decision recognizes with particularity that the nature of the transaction was a sham, that the purpose and only purpose of this transaction elucidated by either party was for lien priority over other creditors. Secondly, neither the propriety of the land trust concept nor the distinction between a trustee and the beneficiaries of a land trust concept was even at issue in this cause, but the propriety of the parties' transaction here was.

Plaintiff argues next that the trial court improvidently granted summary judgment to the defendant when there were still issues of material fact left to be resolved. Plaintiff contends that there were issues of material fact regarding the parties' account of their agreement at their July 2, 1973, meeting, at which time they executed this trust deed and note. Plaintiff contends that the parties' affidavits set forth different versions of this meeting and require a determination by the trier of fact as to whether the documents are a sham or are supported by valid consideration.

■■ It is clear that summary judgment is proper only where there are no issues of material fact. (*Silberstein v. Peoria Town & Country Bowl, Inc.* (1970), 120 Ill. App. 2d 290, 257 N.E.2d 12.) Our previous determination that this note clearly is not supported by consideration would not be changed one iota by the testimony of either plaintiff or defendant as to their purpose, intent, or their interpretation of consideration at the meeting of July 2, 1973. Accordingly, there is no issue of material fact left to be resolved by the trier of fact, and the trial court's granting of defendant's motion for summary judgment was proper.

Plaintiff's final contention is that the principles applicable to summary judgment prevent its application here. The plaintiff argues that he has been prevented from presenting his theory of this case—that the parties executed this note and trust deed to protect the parties' investment of time, money and effort in developing the property held in trust. Plaintiff's counsel (Mr. Bollman), however, at the trial court level, as the following colloquy indicates, suggested a different purpose and theory for this note and trust deed:

"MR. BOLLMAN: Now, I suggest that as long as there had been a satisfactory relationship between the two of them they both would have used this mortgage for the purposes that it was intended.

THE COURT: And what was that?

MR. BOLLMAN: That purpose was to secure the efforts of development, the contributions which they both made, not just the plaintiff but the defendant, to develop this property, to make it salable, to make it profitable for their business ventures.

This was the purpose for that mortgage.

THE COURT: How did it do that?

MR. BOLLMAN: How did it do that? In the event that there might be some other lien as a result of the development of their property. I mean, they were dealing with or presumably could have dealt with other contractors, other subcontractors who might have put liens on it in the development of it.

THE COURT: They would have had a priority.

MR. BOLLMAN: *The theory would be that their mortgage would be prior to some of these other possible liens.*

THE COURT: Can you suggest any other intent than that?

MR. BOLLMAN: *I can't come up with any other intent than to secure their own positions* but I suggest that I'm not sure we have to inquire into that at this point anyway. I think that the defendant, having done this as a businessman, for whatever purposes they wanted to do it at the time, I think that he's bound by that and he can't argue against the validity of the document which he signed.

Well, that is in sum and substance our theory of estoppel as we believe it applies here." (Emphasis added.)

This conversation between plaintiff's counsel and the trial court amply demonstrates that plaintiff was given every opportunity to present evidence on his theory of the case, such as it was. The trial court, accordingly, properly granted summary judgment.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

WOODWARD and GUILD, JJ., concur.