COMMUNITY DISCOUNT CENTERS, INC., Plaintiff-Appellee, *v.* OAKBROOK GUIDO'S, INC., *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 77-525

Opinion filed November 22, 1978.—Rehearing denied February 21, 1979.

---

[1] Justice Buckley participated in this decision while assigned to the Illinois Appellate Court, First District.

Norman E. Goldman, of Spivack & Lasky, of Chicago, for appellants.

John J. Coffey, of Rothschild, Barry & Myers, of Chicago, for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

This appeal requires us to determine whether a lease which the plaintiff, Community Discount Centers, Inc. (Community), as lessee, assigned to the defendant, Oakbrook Guido's, Inc., is still in existence and an asset of that defendant on which Community can levy to satisfy a judgment. The defendants contend that after receiving an assignment of the lease from Community, Oakbrook Guido's purchased the fee interest of the lessor, Klefstad Engineering, resulting in a merger of the interests of the lessor and lessee which terminated the lease as a matter of law.

The leasehold which this action involves covered a 12-acre tract improved with a building used for retail purposes. The lease runs until 1982, with options permitting its extension until 2002. In January 1970, Community assigned its interest as lessee to Oakbrook Guido's. The consideration for the assignment was to be paid in installments and the co-defendant, Guido's Finer Foods, Inc., guaranteed Oakbrook Guido's obligation to make the payments. When the defendants defaulted in the payments, Community obtained a judgment against them, no part of which has been satisfied.

Community, finding no other assets of Oakbrook Guido's, commenced supplementary proceedings to collect its judgment by levying against the lease which it had assigned to Oakbrook Guido's. These proceedings, by which Community sought to make additional parties subject to the citation proceedings and to compel a turnover of the cash flow from the 12-acre parcel to satisfy Community's judgment, were resolved on the basis of affidavits, exhibits and briefs. No testimony was offered. Oakbrook Guido's response was that the interests of the lessor and lessee merged when it purchased the fee interest of Klefstad

Engineering and that this resulted in a termination of the leasehold as a matter of law. The circuit court rejected the defendants' contention. It found that the lease which Community has assigned to Oakbrook Guido's had not been terminated and that the lease was imposed with an equitable lien in favor of Community.

The record established that 5 days before it purchased Community's leasehold interest, Oakbrook Guido's acquired an option to purchase Klefstad Engineering's fee interest. The consideration for the option was furnished by James Guido, president of Oakbrook Guido's, who with his three brothers were its shareholders. Simultaneously with its receipt of the option, Oakbrook Guido's granted an identical option to James Guido.

The option to purchase the fee was subsequently exercised by a notice to Klefstad Engineering from an attorney who stated he was representing Oakbrook Guido's. The notice directed Klefstad Engineering, as optionor, to convey title to Joanne M. Jennings, a spinster, but did not state on whose behalf Jennings was acting. Oakbrook Guido's argues to this court that Jennings was acting as its nominee, while Community argues she was acting as the nominee of the American National Bank & Trust Company (American Bank) as trustee for James Guido and his three brothers, the beneficiaries of the trust. No evidence was offered establishing on whose behalf Jennings was acting, but the record does show that immediately upon receiving legal title to the property, Jennings conveyed legal title to the American Bank as trustee. The deed from Klefstad Engineering to Jennings was subject to existing leases, and Oakbrook Guido's concedes that the lease assigned to it by Community was never formally cancelled. No evidence was offered by the defendants of any payment to Oakbrook Guido's by James Guido or his brothers or the American Bank as trustee, for cancellation of that lease.

At the same time as American Bank as trustee became the owner of the 12-acre parcel, James Guido and his brothers obtained a large loan secured by a mortgage on the parcel and developed it into a fully leased shopping center after using a portion of the mortgage proceeds to pay Klefstad Engineering the purchase price. The shopping center tenants have been issued leases signed by American Bank as trustee under the trust it holds for James Guido and his brothers. By the time of this appeal the stock of Oakbrook Guido's had been transferred to Suburban Holdings, Inc., and its stock was owned by James Guido and his three brothers.

The circuit court ordered on September 24, 1976, that Community receive the cash flow from the leases on the shopping center in excess of $9,962 per month, the amount of the rent Oakbrook Guido's was required to pay under the lease which Community assigned to it. The order provided in the alternative that if the cash flow in excess of the amount of

the debt service on the first mortgage on the shopping center was less than $9,962 per month, Community was to receive the lesser amount. Oakbrook Guido's is appealing from that order.

■■ ■ General principles which courts have followed in determining whether leaseholds have terminated by a merger of the interests of the lessor and the lessee are helpful in deciding whether it is appropriate to recognize a merger of interests in this case. Merger of interests resulting in termination of legal relationships are not favored in equity. (*Miller v. McDonough* (1957), 13 Ill. App. 2d 290, 294, 141 N.E.2d 749.) For a merger to be accomplished, the whole title, legal as well as equitable, must unite in the same person. (*Winters v. Polin* (1941), 309 Ill. App. 458, 463, 33 N.E.2d 497.) Merger of interests should not be recognized where the rights of innocent third persons will be prejudiced. *Winters; Hotel Burnet Co. v. Union Central Life Insurance Co.* (1943), 72 Ohio App. 453, 52 N.E.2d 754; *Browning v. Browning* (1939), 23 Tenn. App. 338, 132 S.W.2d 359; *White v. Coates* (1943), 17 Wash. 2d 686, 137 P.2d 113; *Mobley v. Harkins* (1942), 14 Wash. 2d 276, 128 P.2d 289.

■■ ■ Applying these principles to the facts presented in this case, we note first that the strict requirement that the whole title be united in the same person was not satisfied because the record fails to establish that Oakbrook Guido's ever held legal title. As pointed out above, the record does not establish that in receiving a conveyance of the fee interest from Klefstad Engineering, Jennings was acting as the nominee of Oakbrook Guido's, rather than as the nominee of the American Bank. The direction of Oakbrook Guido's attorney that the real estate be conveyed to Jennings does not make her Oakbrook Guido's nominee. This conclusion is buttressed by Oakbrook Guido's role in the transaction which was to act as a conduit for the American Bank as trustee and for James Guido and his brothers. Oakbrook Guido's assertion in the supplementary proceedings that there had been a merger of interests causing the lease to terminate was in the nature of an affirmative defense; if it claimed to have acquired legal title through the conveyance to Jennings, Oakbrook Guido's had the burden of establishing that Jennings was its nominee. Because it failed to make such a showing, our determination, like that of the circuit court, is that the lease which Community assigned to Oakbrook Guido's is still in existence and remains as an asset of Oakbrook Guido's on which its creditors, including Community, can levy. This conclusion is based on the uncertain status of Jennings which leaves in doubt whether Oakbrook Guido's acquired legal title to the premises covered by the lease and consequently whether the estates of landlord and tenant ever coincided in the same person.

■■ ■ In addition, this proceeding is equitable in character in two respects: first, the doctrine of merger of interests is equitable in nature.

(*Kessler v. Aller* (1936), 287 Ill. App. 606, 5 N.E.2d 761.) Second, both parties agree that supplementary proceedings are essentially equitable in character. See historical and practice notes to section 73 of the Civil Practice Act (citation proceedings) authored by Albert E. Jenner, Jr. and the Honorable Phillip D. Tone. Thus, apart from considering Oakbrook Guido's shortcomings in satisfying the formal requirements for a merger of interests, we also must be concerned with whether application of the doctrine of merger of interests would produce an equitable result. The consequence of recognizing a merger of interests in this case would be that the only corporate asset on which the plaintiff could levy would have vanished without payment of any consideration to Oakbrook Guido's leaving Community as a creditor of that corporation helpless. Equity would not permit the corporation to transfer its assets to its shareholders without adequate consideration, leaving its creditors, including Community, unpaid. (*Landers Frary & Clark v. Vischer Products Co.* (7th Cir. 1953), 201 F.2d 319, 324.) Similarly, a court of equity should not permit a merger of interests to be employed as a device to allow shareholders to strip a corporation of its assets with impunity, and without regard to the position in which the disappearance of corporate assets leaves the corporation's creditors. This conclusion is further supported by the maxim referred to above that equity does not favor merger of interests resulting in termination of legal relationships.

Community argues on this appeal that the finding by the circuit court that there was an equitable lien in its favor establishes that there was a third-party interest in the lease which constituted an intervening estate and prevented a merger of the interests of lessor and lessee. Community also acknowledges in its brief that if the circuit court was correct in finding that the lease was not terminated and is still in force and effect, it is entitled to an appropriate turnover order with respect to rents collected from the premises, whether or not Community had an equitable lien on the lease prior to obtaining judgment against Oakbrook Guido's. In view of our conclusion that even in the absence of such an intervening estate no merger of interests occurred, and in view of the representations made to this court by Community, it is unnecessary for us to consider whether Community has an equitable lien on the lease. To avoid confusion, we direct that the finding in the circuit court order regarding an equitable lien being enforced on the lease in favor of the plaintiff be vacated.

Finally, the defendants contend that the circuit court's order directing that Community receive the cash flow from the premises which were the subject of the leasehold, in excess of the amount required for debt service of the first mortgage on those premises is a nullity. The defendants argue that the persons who are collecting rents on the premises are not before the court. James Guido and his brothers, who

control Oakbrook Guido's are the beneficiaries of the land trust which holds legal title to the shopping center, and they collect the rent from the shopping center tenants. The Guido brothers are proper parties to this proceeding, if they desire to be heard. The circuit court order directing a turnover of rents is not a nullity, but the Guido brothers should be summoned to appear in this proceeding as citation respondents even though any interest they or their land trustee have is inferior to that of Oakbrook Guido's existing lease on the premises. The supplementary proceedings to discover assets should therefore be remanded for the purpose of adding the beneficiaries of the American Bank's trust as parties and permitting them to appear and be heard.

The circuit court's order entered on September 24, 1976, is affirmed in part and vacated in part and remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, vacated in part, and remanded for further proceedings.

JIGANTI, P. J., and McNAMARA, J., concur.